**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| World Group Securities, Inc., | ) | No. CV 07-1657-PHX-JAT |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) | |
| Robert Allen, et al., | ) ) ) | |
| Defendant. | ) ) ) | |

The issue before the Court is whether certain successor-liability claims now pending in a Financial Industry Regulatory Authority ("FINRA") arbitration proceeding are arbitrable. Plaintiff World Group Securities, Inc. ("WGS"), a registered member of FINRA, argues that the claims are not arbitrable because there is no written agreement to arbitrate and the FINRA rules do not otherwise obligate it to do so. Defendants, on the other hand, contend that the claims are arbitrable under the FINRA rules and, alternatively, that WGS must arbitrate the claims pursuant to an agreement between Defendants and WMA Securities, Inc. ("WMAS") despite the fact that WGS did not sign the agreement. WGS moves to enjoin Defendants from pursuing the successor-liability claims in arbitration; Defendants move to dismiss this case and to compel arbitration. After considering the parties' motions and the evidence presented at a preliminary-injunction hearing held on November 9, 2007, the Court finds that WGS is bound as a nonparty to the arbitration agreement between Defendants and WMAS and will therefore compel arbitration on the successor-liability claims.

## I. Background

In 1999, Defendants invested in a number of proprietary mutual fund and insurance products through a registered representative of WMAS, a member of the National Association of Securities Dealers ("NASD"). At the time of the investments, Defendants signed an account agreement with WMAS that contained an arbitration clause and obligated Defendants to pay certain account fees and charges.[1]

On April 12, 2002, WGS acquired certain assets of WMAS, including Defendants' accounts. Thereafter, WGS began operating as a NASD member broker-dealer, became Defendants' broker of record, and began receiving the annual fees generated from the account agreement between Defendants and WMAS. WGS never signed a contract of any kind with Defendants.

In June 2007, after losing a substantial portion of their investments, Defendants instituted what later became FINRA arbitration proceedings against WGS.[2] The arbitration complaint included claims against WGS relating to events that occurred both before and after Defendants became WGS's customers. The claims against WGS relating to events that occurred before Defendants became its customers, and while Defendants were still customers of WMAS, are premised on a successor-liability theory. These successor-liability claims are the only claims at issue in this lawsuit.[3]

---

[1] At the preliminary-injunction hearing, this account agreement, marked as Defendants' Exhibit # 20, was never admitted into evidence because the Court sustained WGS's foundation objection under Rule 901 of the Federal Rules of Evidence. However, Defendants' counsel failed to remind the Court that WGS expressly waived any objection to the admission of this document in the Joint Preliminary Injunction Memorandum (Doc. # 28). As a result of this waiver, the Court now overrules WGS's objection and deems the document admitted into evidence.

[2] The arbitration was originally filed before the NASD, but in July 2007, FINRA succeeded the NASD for the purposes of administering the pending arbitration.

[3] Although WGS initially maintained that FINRA did not have jurisdiction to hear any of Defendants' claims, it now concedes, as it must, that the claims relating to events that

## II.  Legal Standard

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Pursuant to this rule, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, if the complaint fails to state a theory under which WGS may recover, dismissal under 12(b)(6) is appropriate. In reviewing a Rule 12(b)(6) motion, the Court "must construe the complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true." *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).[4]

## III.  Discussion

The United States Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). To avoid the risk of forcing parties to arbitrate matters that they may not have agreed to arbitrate, courts rather than arbitrators determine "questions of arbitrability" unless "the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Whether an enforceable arbitration agreement exists and whether certain claims fall within the scope of such an agreement are both "questions of arbitrability." *Id.* at 84.

Defendants maintain that WGS is obligated to arbitrate the successor-liability claims under both the FINRA rules and Defendants' arbitration agreement with WMAS. The Court will address each of these arguments in turn.

---

occurred after Defendants became its customers are arbitrable under the FINRA rules. See, e.g., *World Group Sec., Inc. v. Sanders*, No. 2:06-CV-00107 PGC, 2006 WL 1278738 (D. Utah May 8, 2006).

[4] The Court's resolution of Defendants' motion to dismiss renders unnecessary the recitation, or consideration, of the well-known legal standards applicable to injunctions.

*A. Arbitration Under the FINRA Rules*

FINRA arbitrations are governed by the NASD Code of Arbitration Procedure (the "Code"). Under the Code, customers can compel registered members of FINRA to arbitrate certain disputes even when no written arbitration agreement exists. *See, e.g.*, *World Group Securities, Inc. v. Sanders*, No. 2:06-CV-00107 PGC, 2006 WL 1278738, at *4 (D. Utah May 8, 2006) (collecting cases). Specifically, Rule 12200 of the Code permits a "customer" to compel arbitration of a dispute "between a customer and a member" that "arises in connection with the business activities of the member."[5]

WGS contends that because the successor-liability claims relate to events that occurred before Defendants became its customers, they do not involve "customer" disputes. The Court agrees. Customer status must be determined either at the time the arbitration complaint is filed or at the time of the occurrence of the events giving rise to the particular claims. As the Eleventh Circuit has noted, determining customer status as of the time the arbitration complaint is filed

> would do significant injustice to the reasonable expectations of [FINRA] members. We cannot imagine that any [FINRA] member would have contemplated that its [FINRA] membership alone would require it to arbitrate claims which arose while a claimant was a customer of another member merely because the claimant subsequently became its customer.

*Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993). For that reason, customer status should be "determined as of the time of the occurrence of events that constitute the factual predicate for the causes of action contained in the arbitration complaint." *Id.* Defendants' successor-liability claims relate to events that occurred while Defendants were customers of WMAS, not of WGS. Thus, WGS is not obligated to arbitrate

---

[5] Rule 12200 of the Code is an amended version of former Rule 10301 that went into effect on April 16, 2007. The cases interpreting and applying Rule 10301 apply with equal force to Rule 12200, as the amendment did not effect any substantive change to the rule. See Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, http://www.finra.org/ArbitrationMediation/Arbitration/CodeofArbitrationProcedure/index.htm.

1 these claims under the Code unless Defendants can show that WGS is WMAS's successor
2 in interest.

3 The Court acknowledges that its decision in this regard is at odds with two federal
4 district-court decisions. Under facts nearly identical to those in this case, the courts in *World*
5 *Group Securities, Inc. v. Bradley*, No. 2:06-CV-320-KJD-GWF, 2007 WL 1489813, at *1
6 (D. Nev. May 21, 2007), and *World Group Securities, Inc. v. Sanders*, No. 2:06-CV-00107
7 PGC, 2006 WL 1278738, at *3-6 (D. Utah May 8, 2006), held that because the arbitration
8 complaint included concededly arbitrable claims, the successor-liability claims were
9 arbitrable as well. In this Court's view, such an approach violates the court's duty to ensure
10 that the parties have agreed to submit "a *particular* dispute to arbitration." *Howsam*, 537
11 U.S. at 83 (emphasis added). The fact that one claim filed in arbitration is within the scope
12 of an arbitration agreement does not mean that all of the other claims filed in that same
13 arbitration are arbitrable as well. *Id.* at 84 ("[A] disagreement about whether an arbitration
14 clause in a concededly binding contract applies to a particular type of controversy is for the
15 court."). Absent a clear agreement to the contrary, it is the Court's responsibility to
16 determine the arbitrability of each claim.

17 *B. Arbitration Under the Defendants' Agreement with WMAS*

18 Having concluded that WGS is not obligated to arbitrate the successor-liability claims
19 under the FINRA rules unless Defendants can show that WGS is the successor in interest to
20 WMAS, the Court will next address whether WGS is bound as a nonparty to Defendants'
21 arbitration agreement with WMAS rather than proceed to the merits of the successor-liability
22 dispute. If the arbitration agreement is binding on WGS, the Court will then consider
23 whether the successor-liability claims are within the scope of that agreement. If it turns out
24 that WGS is required to arbitrate the successor-liability claims under Defendants' agreement
25 with WMAS, the merits of Defendants' successor-liability theory are for the arbitrator to
26 decide, not this Court.

27
28
- 5 -

### 1. Is WGS Bound to the Arbitration Agreement Between Defendants and WMAS Even Though It Did Not Sign the Agreement?

Defendants contend that WGS is bound as a nonparty to the arbitration agreement between Defendants and WMAS as a matter of equitable estoppel. This doctrine "'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). In the arbitration context, courts have concluded that a nonsignatory to a contract containing an arbitration clause may be estopped from refusing to comply with that clause if the nonsignatory knowingly receives a "direct benefit" from the underlying contract.[6] *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005); *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.*, 314 F. Supp. 2d 1045, 1056 (D. Or. 2004).

Here, WGS concedes that it knowingly received the fees generated from Defendants' accounts after becoming their broker of record. Defendants' obligation to pay these fees derives directly from the contract containing the arbitration clause. WGS argues, however, that it was only *indirectly* benefited by the arbitration contract because Defendants did not pay the fees directly to WGS. Instead, pursuant to the account agreement, Defendants paid the fees to the providers of the investment products that they had purchased through WMAS. The product providers then paid a portion of the fees to WGS pursuant to contracts that WGS expressly assumed from WMAS at the time of the asset purchase. Thus, WGS contends, because it received the fees as a direct result of the product providers' contractual obligation,

---

[6] Citing *Wood v. PennTex Res., L.P.*, 458 F. Supp. 2d 355, 373 (S.D. Tex. 2006), WGS contends that the benefit must be substantial in addition to being direct. To the extent this case stands for that proposition, the Court does not find it persuasive. WGS purchased numerous accounts from WMAS. The amount of fees generated from each of those accounts depends largely on the level of account activity. Treating low-activity accounts differently from high-activity accounts, when the arbitration agreements in each instance are identical, would be fundamentally unfair.

- 6 -

1  it was only indirectly benefited by Defendants' contractual obligation.

2  WGS's argument wrongly assumes that if the receipt of the fees was a direct benefit of the product-provider contract, it cannot be a direct benefit of the account agreement. However, pass-through arrangements like the one between WGS and the product providers are entirely contingent on the initial obligation. This Court, therefore, does not hesitate to conclude that WGS's fees derived directly from Defendants' obligation to pay them, which is found in the contract containing the arbitration clause. *See Legacy Wireless*, 314 F. Supp. 2d at 1056 (holding that fees received under a similar pass-through arrangement were a "direct benefit" of the contract containing the initial obligation). To hold otherwise would require this Court to ignore the realities of the financial arrangement under consideration.

Moreover, the transfer of Defendants' accounts from WMAS to WGS was accomplished by virtue of a negative consent letter that WGS sent to WMAS's customers. In that letter, WGS stated: "The transfer will not affect the terms or agreement(s) relating to your Accounts." [Plaintiff's Ex. 15 from the Preliminary Injunction Hearing.] "Accounts" was defined as "your mutual fund account(s) and/or variable contract(s)." [*Id.*] The plain meaning of "agreement(s) relating to your mutual fund account(s) and/or variable contract(s)" would certainly include the agreement obligating Defendants to pay their account fees. Thus, even if WGS was not estopped from denying Defendants' arbitration agreement with WMAS, it appears that WGS would be bound to the agreement under ordinary principles of contract interpretation.[7]

### 2. Do the Successor-Liability Claims Fall Within the Scope of the Agreement?

Having determined that WGS is bound by Defendants' arbitration agreement with WMAS, the Court must now ascertain whether Defendants' successor-liability claims fall

---

[7] As noted below, the parties agree that Arizona law applies to the interpretation of the account agreement, and Arizona follows the plain-meaning approach to contract interpretation. *United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 411 (Ariz. Ct. App. 1983).

- 7 -

within the scope of that agreement. State contract law governs this issue, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and the parties agree that Arizona law applies.

In Arizona, courts interpret contracts according to the parties' intent, *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138 (Ariz. 1993), looking "to the plain meaning of the words as viewed in the context of the contract as a whole." *United Cal. Bank*, 681 P.2d at 411. When the terms of a contract are "unambiguous on its face," the interpretation of the contract is a question of law for the court to decide. *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. Ct. App. 1975).

In this case, the terms of the arbitration clause unambiguously evidence the parties' intent to arbitrate all disputes concerning the accounts, which necessarily includes the successor-liability claims. The clause reads that "*any* controversy arising out of or related to [the] accounts, . . . or related to this agreement or breach thereof, shall be settled by arbitration." [Defendants' Ex. # 20 from the Preliminary Injunction Hearing (emphasis added).] The unconditional and all-inclusive nature of this provision leaves no doubt that the successor-liability claims fall within the parties' arbitration agreement.

### IV.   Conclusion

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss and To Compel Arbitration is granted (Doc. # 18). WGS shall arbitrate all of Defendants' claims now pending in FINRA arbitration, including the successor-liability claims;

**IT IS FURTHER ORDERED** that WGS's Motion for Preliminary Injunction and Stay of Arbitration (Doc. # 2) is denied. The Clerk of the Court shall enter judgment accordingly.

DATED this 20th day of November, 2007.

James A. Teilborg
United States District Judge

- 8 -